**In re Freddy Glyn SMITH and Nancy Mae Smith.**

**Structured Investments Co., LLC, Plaintiff,**

**v.**

**Freddy Glyn Smith, Nancy Mae Smith and Alex B. Gates, Trustee, Defendants.**

**Bankruptcy No. 02–11935. Adversary No. 02–1141.**

United States Bankruptcy Court, N.D. Mississippi.

May 30, 2003.

Joe Morgan Wilson, Senatobia, MS, for Debtors.

Kristina M. Johnson, Jackson, MS, for creditor.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the complaint filed by the plaintiff, Structured Investments Co., LLC (Structured Investments); a timely answer having been filed by the defendants, Freddy Glyn Smith and Nancy Mae Smith (respectively Mr. Smith or Mrs. Smith); on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (I), and (O).

### II.

The complaint filed by the plaintiff seeks the following relief:

Count 1–The plaintiff asserts that it is entitled to a declaratory judgment that it has the equitable right to receive certain monthly payments from Mr. Smith's pension plan distributions pursuant to an Annuity Utilization Agreement entered into by Mr. Smith and Structured Investments on June 17, 1998, as well as, that the said monthly pension plan distributions are not property of the Smiths' bankruptcy estate.

Count 2–That Structured Investments is entitled to a non-dischargeable judgment against the debtors pursuant to § 523(a)(2)(A) in the principal amount of $102,340.00, together with pre-judgment and post-judgment interest.

Count 3–That Structured Investments is entitled to a non-dischargeable judgment against the debtors pursuant to § 523(a)(2)(B) in the principal amount of $102,340.00, together with pre-judgment and post-judgment interest.

Count 4–That Structured Investments is entitled to a non-dischargeable judgment against the debtors pursuant to § 523(a)(4) in the principal amount of $102,340.00, together with pre-judgment and post-judgment interest.

Count 5–That Structured Investments is entitled to a non-dischargeable judgment against the debtors pursuant to § 523(a)(6) in the principal amount of $102,340.00, together with pre-judgment and post-judgment interest.

Count 6–That Structured Investments is entitled to its attorneys' fees and costs pursuant to the terms of the Annuity Utilization Agreement.

The defendant, Alex B. Gates, is the duly appointed Chapter 7 trustee in the debtors' bankruptcy case. He elected not to enter an appearance in this adversary proceeding. A default judgment was taken against him in his capacity as trustee as to Count 1 of the plaintiff's complaint to

the effect that the monthly pension plan distributions are not property of the debtors' bankruptcy estate.

### III.

The parties stipulated to the following facts:

1. Mr. Smith is the legal recipient of monthly pension payments in the amount of approximately $1,500.00. Each month the payor of the monthly payments deposits the monthly payments into an account designated by Mr. Smith (the "Account").

2. In March, 1998, Mr. Smith began the process of obtaining a present value lump sum payment in exchange for his agreement to remit certain of the monthly payments (the "Monthly Payments") to Structured Investments.

3. In connection therewith, Mr. Smith provided written statements ("Financial Statements") containing information regarding his financial condition ("Financial Information").

4. The Financial Statements included without limitation the Financial Information Form and related correspondence, a true and correct copies of which are attached to the Complaint as composite Exhibit "A."

5. The Financial Information in the Financial Statements included, without limitation, the representations which were clearly provided as a basis for the transaction with Structured Investments, that:

(a) Mr. Smith had approximately $45,000.00 of equity in real estate;

(b) Mr. Smith had no health issues which should be considered in his ability to honor the transaction with Structured Investments; and

(c) Mr. Smith had not been previously "declared bankrupt," had sufficient income to meet all of his obligations as they became due, and had no liabilities which he had not disclosed.

6. On June 17, 1998, Mr. Smith entered into an Annuity Utilization Agreement and related documents (the "Agreement") with Structured Investments, true and correct copies of which are attached to the Complaint as composite Exhibit "B."

7. In accordance with the Agreement, Structured Investments transferred $39,887.00 (the "Money") to or for the benefit of Mr. Smith.

8. In exchange, Mr. Smith promised, through the Agreement, to remit to Structured Investments immediately upon his receipt 120 of the Monthly Payments in the amount of $1,204.00 each from Mr. Smith's stream of pension plan distributions and to alter the designated account to an Account in the name of Structured Investments (the "Assignment Account").

9. Mrs. Smith consented to the Agreement as evidenced by the Special Consent attached to the Agreement.

10. After making payments through June, 2001, Mr. Smith diverted the Monthly Payments from the Assignment Account for the Debtors' personal use. The Debtors thereafter filed for Chapter 7 relief on March 25, 2002.

11. Mr. Smith testified under Rule 2004 and at his Section 341 Meeting that he had filed a Chapter 13 bankruptcy prior to 1998.

12. Pursuant to Rule 2004, Mr. Smith has produced documents that indicate and he has testified that he had significant health issues after entering into the Agreement.

13. Prior to entering into the Agreement, Mr. Smith represented that he intended to use the Money for "financial liquidation."

14. Mr. Smith represented that he would use all of the Money to pay off bills.

15. The Money was obtained by Mr. Smith by the use of Mr. Smith's Financial Statements.

16. The Financial Statements were statements in writing provided by Mr. Smith respecting his financial condition.

## IV.

The stipulated facts unarguably establish that the Smiths agreed to repay the $39,887.00, advanced by Structured Investments, through the remittance of 120 monthly pension plan distributions in the sum of $1,204.00 each. While initially this appears to be a very handsome rate of return to Structured Investments over the ten year repayment period, the court learned at trial that $241.00 of each monthly distribution was allocated to a Pooled Investment Reserve Account. If the Smiths had not defaulted under the terms of the Annuity Utilization Agreement, the funds collected in this account (ideally, 120 allocations of $241.00) would be refunded to the Smiths at the conclusion of the transaction.

The Annuity Utilization Agreement, plaintiff's Exhibit A11, contains the following specific provisions:

(a) § I.A. (p. 1 of A11)—this provides that the transaction is the agreement to exchange a lump sum payment by Structured Investments for Mr. Smith's promise to remit a specified number of Monthly Payments to Structured Investments "immediately upon receipt thereof." This provision also provides in bold print that the transaction is "not a loan."

(b) § 2.3 (p. 3 of A11)—this establishes the Assignment Account wherein the Monthly Payments unconditionally promised to Structured Invest-

ments would be deposited. Mr. Smith also agreed in this provision to immediately take any and all steps necessary to cause any payments not deposited that came under this "dominion or control" to be deposited into the Assignment Account.

(c) § 11.2C (p. 7 of A11)—this provides that Mr. Smith will not alter in any way the payment instructions with respect to § 2.3 of the Agreement.

(d) § 11.6 (p. 7 of A11)—this provides that Mr. Smith promised to ensure the deposit of the Monthly Payments into the Assignment Account in the amounts set forth in the Agreement.

■ Prior to the commencement of the debtors' bankruptcy case, the court finds that Mr. Smith, with the consent of Mrs. Smith, unconditionally transferred to Structured Investments the right to receive 120 monthly pension plan payments as consideration for the cash advance. Mr. Smith was expressly prohibited from diverting to himself those payments that were owing to Structured Investments. Since the Chapter 7 trustee has elected not to appear in this adversary proceeding and a default judgment has been taken against him as to Count 1 of the plaintiff's complaint, the court is of the opinion that the monthly pension plan payments should not be considered as property of the debtors' bankruptcy estate. This conclusion is consistent with the decisions of *Berghman v. J.G. Wentworth S.S.C., Ltd. Partnership (In re Berghman)*, 235 B.R. 683 (Bankr. M.D.Fla.1999), and *In re Terry*, 245 B.R. 422 (Bankr.N.D.Ga.2000). As such, the court concludes that Count 1 of the plaintiff's complaint is well taken. The plaintiff is entitled to a declaratory judgment that the 120 monthly pension plan payments are not property of the debtors' bankruptcy estate.

## V.

■ Additionally, the court will address Count 5 of the plaintiff's complaint which asserts that the total amount of the unpaid monthly pension plan payments are non-dischargeable in the sum of $102,340.00, pursuant to § 523(a)(6) of the Bankruptcy Code.

In complete disregard for the terms of the Annuity Utilization Agreement, following the June, 2001, payment, Mr. Smith diverted the subsequent payments to his own use, allegedly because he was having financial problems. In effect, this is equivalent to a conversion of the funds that had been contractually transferred to Structured Investments. Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt resulting from a willful and malicious injury caused by the debtor to another entity or to the property of another entity. The Fifth Circuit Court of Appeals articulated its standard for the application of § 523(a)(6) in *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir.1998). The court concluded that an injury is "willful and malicious" where the debtor's conduct would cause injury according to an objective substantial certainty of harm standard or upon a showing that the debtor had a subjective motive to cause harm. *See also, Pharr v. Ford (In re Ford)*, 276 B.R. 561 (Bankr.N.D.Miss. 2001).

Some courts have taken a more narrow approach to excepting debts from discharge pursuant to § 523(a)(6) than that adopted by the Fifth Circuit. These decisions essentially hold that for a debtor's conduct to bring a debt within the discharge exception for willful and malicious injury that the debtor must will or desire the harm, or believe that the injury is substantially certain to occur as a result of his behavior. *See, In re Markowitz*, 190 F.3d 455 (6th Cir.1999); *Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir.2002); and *Thiara v. Spycher Brothers (In re Thiara)*, 285 B.R. 420 (9th Cir. BAP 2002). These cases reject the objective substantial certainty of harm standard, adopted by the Fifth Circuit in *Miller*, in favor of a completely subjective standard which requires proof of the debtor's intent.

In the matter before this court, there can be no doubt that Mr. Smith deliberately diverted the monthly pension plan payments for his own use with the knowledge that this action would result in harm to Structured Investments. Consequently, regardless of the standard that might be applied, Mr. Smith's conduct is both willful and malicious insofar as § 523(a)(6) of the Bankruptcy Code is concerned. The fact that he and Mrs. Smith were having financial problems is an insufficient excuse for the diversion. Consequently, the total of the remaining monthly payments, owed pursuant to the Annuity Utilization Agreement in the sum of $102,340.00, is a non-dischargeable debt in this bankruptcy case. Prejudgment interest shall be allowed on the amount of monthly pension plan payments diverted from July, 2001, to the date of entry of this opinion. Thereafter, interest shall accrue from the first day of the month on any payment not remitted to Structured Investments for as long as said payment remains unpaid. Interest shall be calculated at the highest statutory rate that would be applicable to judgments under the laws of the State of California.

■ In keeping with the provisions of the Annuity Utilization Agreement, Structured Investments is entitled to reasonable attorney's fees which will be set by this court. The attorney representing Structured Investments shall submit an itemization of attorneys' fees and expenses incurred in connection with this litigation within thirty days following the entry of this opinion. Counsel for the debtors shall

have twenty days thereafter to object to the reasonableness of the fees and expenses requested.

The non-dischargeable judgment rendered herein shall be reduced accordingly upon the payment of future monthly pension plan distributions to Structured Investments.

## VI.

Because of the conclusions expressed hereinabove, the court will not address the other counts set forth in the plaintiff's complaint.

An Order will be entered contemporaneously with this opinion.